Jocelyn E. RAINEY, Plaintiff,

v.

**WAYNE STATE UNIVERSITY, et al., Defendants.**

No. 97–CV–60152–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 26, 1998.

---

Douglas G. McCray, Goodman, Eden, Detroit, MI, O'Neal O. Wright, O'Neal O. Wright Assoc., Detroit, MI, Victoria A. Roberts, Detroit, MI, for Jocelyn E. Rainey, Plaintiff.

William G. Abbatt, Robert C. Brandenburg, Brooks & Kushman, Southfield, MI, for Wayne State University, Defendant.

*OPINION AND ORDER*

STEEH, District Judge.

This copyright infringement action arises out of defendants' alleged unauthorized use of three of plaintiff's paintings in a brochure distributed at the 1997 North American Auto Show. Plaintiff's six-count complaint alleges federal claims under the Copyright Act and the Lanham Act and related state law claims. Defendants have moved to dismiss plaintiff's state law claims for breach of fiduciary duty (Count III), intentional infliction of emotional distress (Count IV), and unjust enrichment (Count VI),[1] on the grounds that these claims are preempted by federal copyright law. Defendants also have moved to dismiss plaintiff's claim for profit damages on the grounds that it is speculative. Oral argument on the motion was heard on August 20, 1998. Having carefully reviewed the pleadings and arguments of counsel, defendants' motion for summary judgment based on the doctrine of preemption shall be granted in part and denied in part, and defendants' motion to dismiss plaintiff's claim for profit damages shall be granted.

*I. BACKGROUND*

In 1996, defendant Mercedes–Benz of North America, Inc. (Mercedes–Benz), and defendant Daimler Benz, contacted professor Peter Williams of Wayne State University (WSU) regarding a possible art exhibit at the 1997 North American Auto Show. At the time, plaintiff Jocelyn Rainey was a masters student in the fine arts program at WSU. She expressed interest in the project to professor Williams. As a result, plaintiff was included in several planning meetings with representatives of Mercedes–Benz. They explained that the project involved having student artists from WSU paint large cargo containers at the auto show. The cargo boxes were to be displayed around the Mercedes–Benz exhibit where its 1997 new cars were displayed. During these meetings to plan the exhibit, it was agreed that a central theme would coordinate the students' artwork at the show.

Plaintiff suggested that the theme involve using "hands." Plaintiff's own artwork included four paintings portraying colorful hands in different positions against colorful backgrounds. Mercedes–Benz modified plaintiff's suggestion and adopted the "hand-

1. For purposes of this order, the court refers to the counts as numbered in the second amended complaint, which plaintiff filed after defendants submitted their motion for summary judgment.

to-hand" theme for the exhibit. In connection with the art exhibit, Mercedes–Benz prepared a brochure promoting the exhibit which described the symbol of hands as "a gesture of 'welcome' and communication between all people."

Approximately 2,000 of the brochures were handed out at the 1997 auto show. Plaintiff maintains that the brochure was directed at the press and VIPs. The brochure included a photograph and short profile of each student artist along with a reproduction of one individual work. Each student, including plaintiff, was paid $1,400 for the use of their one work. The students were also offered a paid trip to Spain where defendants had planned to continue the exhibit at another auto show in Barcelona. Plaintiff did not accept the trip.

In addition to the one painting which plaintiff agreed to have reproduced in the brochure, Mercedes–Benz included three other paintings of the plaintiff which she contends she did not agree to include. She alleges that professor Williams asked her to produce the other paintings for the sole purpose of allowing Mercedes–Benz to view the colors to be used on the cargo containers. Plaintiff further argues that when she found out that three of her other paintings were included in the brochure, she protested to professor Williams, but he refused to take any action to prevent further unauthorized copying and reproduction. Plaintiff also contends that Mercedes–Benz published the works without identifying her as the author. Moreover, she contends that one of the works was published upside down.

Plaintiff's second amended complaint alleges six counts:[2] (I) copyright infringement pursuant to 17 U.S.C. § 106 and 106A, (II) violation of the Lanham Act, 15 U.S.C. § 1125, (III) breach of fiduciary relationship against professor Williams, (IV) intentional infliction of emotional distress, (V) fraud, and (VI) unjust enrichment. She seeks injunctive relief preventing the further reproduction and distribution of her paintings, and monetary damages including profits acquired by defendants as a result of the infringement, fees paid to WSU and Professor Williams, and the value of national and international publicity and advertising acquired by WSU. Plaintiff has sued WSU, Professor Williams, Mercedes–Benz, Daimler Benz, Sandra Bartsch, Wolfram Schaffer, Design Hoch Drei, and unknown agents of the above parties.

Plaintiff had until June 30, 1998, to identify the "unknown agents" named as defendants pursuant to Magistrate Judge Carlson's March 17, 1998 order. Because plaintiff failed to identify those defendants as required, they shall be dismissed. Magistrate Judge Carlson's order also required that plaintiff effect service on individual German defendants Bartsch and Schaffer by June 30, 1998. To date, plaintiff has not filed the required proof of service. Accordingly, they shall be dismissed without prejudice. The court now addresses two motions for partial summary judgment filed by the remaining defendants: WSU, Professor Williams, Mercedes–Benz, and Daimler Benz. For purposes of this order, the term "defendants" shall refer to the moving defendants only.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See F.D.I.C. v. Alexander, 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Kutrom Corp. v. City of Center Line, 979 F.2d 1171, 1174 (6th Cir.1992).

---

**2.** The second amended complaint actually alleges seven counts, but the seventh count was so captioned in error as it does not set forth a legal claim at all, but is really plaintiff's claim for relief.

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.*, 42 F.3d 981, 984 (6th Cir.1994) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945 (6th Cir.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Further, the non-moving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

## III. ANALYSIS

### A. PREEMPTION

Defendants' first motion seeks to dismiss plaintiff's state law claims for breach of fiduciary duty, intentional infliction of emotional distress and unjust enrichment, on the grounds that those claims are preempted by federal copyright law. Federal copyright law, 17 U.S.C. § 301(a), provides for broad preemption of state law claims which protect the equivalent rights guaranteed by federal copyright laws and that extend to works coming within the scope of the Federal Copyright Protection:

> **§ 301. Preemption with respect to other laws**
>
> (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Despite the sweeping preemptive effect of § 301(a), Congress preserved certain state laws from preemption through the enactment of § 301(b) which provides in pertinent part:

> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
>
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301(b)(3).

To determine if federal copyright law preempts a state claim, the court must apply a two-step analysis. *Allied Artists Pictures Corp. v. Rhodes*, 496 F.Supp. 408 441 (S.D.Ohio 1980), *aff'd in relevant part*, 679 F.2d 656 (6th Cir.1982). First, the court must determine whether the state cause of action grants or destroys any rights that are "equivalent" to the exclusive rights of copyright set forth in 17 U.S.C. § 106. *Id.* at 443.

Section 106 affords a copyright owner the exclusive right to (1) reproduce the copyrighted work, (2) prepare derivative works, (3) distribute copies of the work by sale or otherwise, (4) perform the work publicly, and (5) display the work publicly. 17 U.S.C. § 106(1)–(5). Secondly, the court must determine whether the state claim extends to works within the exclusive scope of the copyright laws as set forth in 17 U.S.C. § 102 and § 103. *Id.* In this case, there is no dispute that the work in dispute is a series of paintings which is a "pictorial, graphic ... work" which falls under the ambit of § 102(5). Thus, the sole issue for the court to resolve is whether plaintiff's state law claims seek to vindicate the equivalent rights which federal copyright laws protect.

■ The key to making this determination is to ask if the state law claim requires proof of an "extra element" in addition to the acts of reproduction, performance, distribution or display, which are protected by federal copyright law § 106. *Computer Assoc. Int'l v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992) (quoting 1 *Nimmer* § 1.01[B] at 1–14–15); *Trandes Corp. v. Guy F. Atkinson, Co.,* 996 F.2d 655, 659 (4th Cir.), *cert. denied,* 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993) (same). If an "extra element" that changes the "nature of the action so that it is qualitatively different from a copyright infringement claim" is required to prove the state claim, then the state claim does not lie within the general scope of copyright, and it is not preempted. *Id.* (citation omitted). In other words, where the state law claim requires proof beyond mere reproduction and the like, it is not the equivalent of a copyright claim, and is not preempted. *Id.*

Defendants argue that the "extra elements" standard as set forth by two federal courts of appeals and by *Nimmer on Copyright,* the leading copyright treatise, is not controlling. In support of this argument, defendants rely solely on *Rand McNally & Co. v. Fleet Mgt. Sys.,* 591 F.Supp. 726 (N.D.Ill.1983). *Rand McNally* does not support the proposition that the "extra element" test does not apply. Instead, that case held only that when a state law claim requires scienter in addition to reproduction of a copyrighted work, this showing does not constitute an extra qualitative element which would save a claim from preemption. *Id.* at 739. *Rand McNally* does not support defendants' argument that the court should reject the "extra element" standard for determining whether preemption exists. Accordingly, the court shall use that standard to determine if the Copyright Act preempts plaintiff's breach of fiduciary duty, intentional infliction of emotional distress, and unjust enrichment claims.

### 1. Breach of Fiduciary Duty

■ Plaintiff has sued her former professor, defendant Peter Williams, and none of the other defendants, for breach of fiduciary duty. Plaintiff claims that she placed her trust in Professor Williams and gave him her original artwork with the understanding that it would be used to select the color scheme for the auto show exhibit. She claims that Williams betrayed her trust by giving her artwork to Mercedes–Benz for publication without her permission. To prove her breach of fiduciary duty claim, plaintiff will need to show more than mere reproduction of her work. She will need to prove that she in fact had a fiduciary relationship with Williams. "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v. Ramirez,* 211 Mich.App. 501, 508, 536 N.W.2d 280 (1995) (citation omitted). To prove breach of a fiduciary relationship, plaintiff must show that the "position of influence has been acquired and abused," or the "confidence has been reposed and betrayed." *Id.* (citation omitted). Proof that (1) a fiduciary relationship exists, and (2) that it has been betrayed certainly qualifies as "extra elements" which removes plaintiff's claim from the preemptive effect of § 301(a).

Defendants argue that *Wharton v. Columbia Pictures Indus.,* 907 F.Supp. 144, 146 (D.Md.1995) requires that plaintiff's breach of fiduciary duty claim be dismissed under the doctrine of preemption. The court disagrees. First and most importantly, *Wharton* is distinguishable because that case did not involve a breach of fiduciary duty claim.

In *Wharton*, the author of a screenplay brought suit against a motion picture company which had rejected his script but then allegedly plagiarized

In their reply brief, defendants argue that if plaintiff's breach of fiduciary duty claim is not barred by the doctrine of preemption, that it should be dismissed because plaintiff has failed to present sufficient proofs to create a fact question as to whether or not she had a fiduciary relationship with Williams. The court has not considered this argument which was improperly raised for the first time in the reply brief as plaintiff has not been afforded the opportunity to respond.

### 2. Intentional Infliction of Emotional Distress

 Defendants also seek dismissal of plaintiff's intentional infliction of emotional distress claim based on preemption. In her second amended complaint, plaintiff has pled this count against all defendants. Against defendant Williams, plaintiff avers:

Defendant Peter Williams' conduct in intentionally using the position of trust that he held to trick and defraud Jocelyn Rainey into giving him possession of her artwork so that he could, in effect, steal it is in blatant violation of United States' copyright laws; was for monetary gain, and was extreme and outrageous conduct.

Defendant Peter Williams' conduct was particularly outrageous in light of the fact that the infringed artwork was produced by Plaintiff following and as a direct result of a personal tragedy of which Peter Williams was aware. Peter Williams was aware that given this special meaning, publication of Plaintiff's work without her permission and without attribution and under these circumstances, would cause Plaintiff to suffer injuries.

Plaintiff's Second Amended Complaint, ¶¶ 88–89. Against the Mercedes–Benz defendants, plaintiff avers:

Once Defendant Mercedes–Benz AG's and/or Mercedes–Benz of North America, Inc.'s agents, employees or representatives became aware that no permission existed to copy and distribute Plaintiff's artwork, their conduct in intentionally proceeding to

copy and distribute Plaintiff's artwork to a worldwide audience, despite Plaintiff's protests, and in knowing violation of United States Copyright laws, was extreme and outrageous.

Plaintiffs Second Amended Complaint, ¶ 90. Michigan law is well established that in order to prove an intentional infliction of emotional distress claim, plaintiff must prove four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985). In this case, the extreme and outrageous conduct which plaintiff relies upon to prove her claim is the unauthorized reproduction of her artwork. As defendants correctly point out, this is exactly what copyright law protects.

Plaintiff argues that defendants will need to prove intent or recklessness as an additional element. As previously discussed, wrongdoing does not constitute an additional qualitative element which will save a state law claim from preemption. *Rand McNally*, 591 F.Supp. at 739 (citing *Nimmer* on Copyright § 1.01[B] which discusses circularity of "wrongfulness" as additional element). Scienter does not alter the nature of the claim so that it is qualitatively different from a copyright infringement claim. Ultimately, the only substantive issue to be resolved in plaintiff's intentional infliction of emotional distress claim is whether defendants' reproduced her work without her permission. The Copyright Act provides equivalent protection for this alleged wrong. Accordingly, plaintiff's intentional infliction of emotional distress claim is preempted.

### 3. Unjust Enrichment

 Finally, the court considers whether plaintiff's unjust enrichment claim against all defendants is barred by preemption. In this claim, plaintiff avers that defendants benefitted from the unauthorized copying of her artwork. This claim does not require proof of an element in addition to proof of copyright infringement. Plaintiff argues that she will prove this claim by showing breach of an alleged contract, but this is not a necessary

**970**

element of an unjust enrichment claim. *See B & M Die Co. v. Ford Motor Co.,* 167 Mich.App. 176, 181, 421 N.W.2d 620 (1988) (unjust enrichment claim requires proof of benefit by defendant to plaintiff which is inequitable). Accordingly, plaintiff's unjust enrichment claim is preempted by copyright law and must be dismissed. *See e.q. Patrick v. Francis,* 887 F.Supp. 481, 484 (W.D.N.Y. 1995) (preemption barred unjust enrichment claim).

## B. *PROFITS*

The court now turns to defendants' second motion which seeks to preclude plaintiff's claim for profits on the grounds that those damages are speculative.

### 1. *Recoverable Damages under Federal Copyright Law*

Federal copyright law provides that a plaintiff may elect to recover either (1) actual damages plus the infringer's non-duplicative profits, or (2) statutory damages. 17 U.S.C. § 504. The election may be made at any time prior to entry of final judgment. *Id.* Statutory damages generally are awarded where proof of actual damages and/or profits of the infringer are insufficient. In this case, plaintiff has alleged both types of damages and has reserved the right to make the election. Section 504(b) provides for actual damages and profits as follows:

**(b) Actual Damages and Profits**

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

§ 504(b).

■ Actual damages are generally proven by showing loss in the fair market value of the copyright, which is typically measured by the profits of the copyright owner lost as a result of the infringement. *Data General v. Grumman Sys. Support,* 36 F.3d 1147 (1st Cir.1994). Another way of measuring actual damages is the extent to which the market value of the copyrighted work has been injured or destroyed, in other words, what a willing buyer would have been reasonably required to pay a willing seller. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 512 (9th Cir.1985). In this case, plaintiff bases her claim for actual damages, in part, on the fact that defendants published one reproduction of her work upside down, allegedly diminishing her reputation. She further claims diminution in the value of her paintings as a result of repeated publication in the promotional brochure.

In addition to actual damages, when the infringer makes more profits as a result of the infringement than the copyright holder would have earned, the copyright holder is entitled to these monies as well. 17 U.S.C. § 504(b). Before profits of defendants attributable to the infringement may be awarded, however, plaintiff must show that those profits are not already included in any actual damages which are awarded. 17 U.S.C. § 504(b). Section 504(b) plainly states that the copyright owner may recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." As more fully explained below, plaintiff's claim for profit damages must be dismissed because plaintiff has failed to show that defendants' profits are attributable to the alleged infringement and her claim is pure conjecture.

### 2. *Indirect Profits of the Infringer are too Speculative*

■ Defendants contend that the brochure was not a direct marketing or advertising brochure, and that vehicles are not for sale at the auto show. Plaintiff responds that defendants benefitted from using her artwork in brochures distributed at the 1997 International North American Auto Show held in Detroit, and that about 2,000 of the brochures were distributed at press conferences,

special events and VIP receptions. Although plaintiff is correct that indirect profits of the infringer may be awarded, such claims are difficult to prove and are often unsuccessful. 1 *Nimmer on Copyright* § 14.03[A] at 14–33 (1996). In this case, plaintiff has failed to submit sufficient proofs in support of her damages claim for profits of defendants to survive summary judgment. It is not disputed that defendants Mercedes–Benz and Daimler–Benz are corporate giants in their own right, and moreover these two defendants have recently merged with each other and with Chrysler. Their combined income stream is extremely complex and their gross revenues are quite significant, so much so, in fact, that defendants contend it would be highly prejudicial to them if they were required to disclose their total gross revenues to a jury. Furthermore, the allegedly infringing brochure benefitted defendants only tangentially as it cannot be traced directly to any car sales. Plaintiff herself admits that it benefitted defendants only indirectly in the form of enhanced goodwill. She has failed, however, to introduce any evidence from which the fact finder could reasonably calculate these alleged indirect profits.

Profits of the infringer may not be awarded where there is no rational basis for determining them. Damages must be based on credible evidence, not speculation. *Sunset Lamp Corp. v. Alsy Corp.*, 749 F.Supp. 520, 524 (S.D.N.Y.1990). In similar circumstances, courts have disallowed recovery for profits of the infringer. For example, in *Metro–Goldwyn–Mayer, supra,* the Ninth Circuit vacated an award of profits where the district court failed to explain the evidentiary basis for the award. 772 F.2d at 519. In that case, the district court awarded profits to the copyright holder of a musical play based on an infringing musical revue performed at defendant MGM's Grand Hotel in Las Vegas. *Id.* at 581. The district court considered evidence of the revue's gross profits and defendant's overhead and costs which showed that net profits of the play totaled about $2.5 million, and from this gross amount concluded that a fair apportionment to plaintiff was a profit award of $22,000. *Id.* at 518. The court of appeals remanded the case because the district court

failed to explain how it arrived at the $22,000 figure. *Id.* In remanding the case, the court of appeals noted the difficulty of determining profit damages, and stated that "if a reasonable, nonspeculative formula cannot be derived ... then the court should award statutory damages." *Id.* at 519.

The court of appeals reached a similar conclusion in *Cream Records, Inc. v. Joseph Schlitz Brewing, Co.,* 754 F.2d 826, 829 (9th Cir.1985), where it stated that profits of the infringer must be based on a "reasonable approximation." In that case, a copyright owner of a popular song sued a beer manufacturer for using the song in its commercial without paying a licensing fee. The Ninth Circuit affirmed an award of profits where the copyright holder submitted evidence of the defendants' advertising budget and the percentage of that budget which was spent on the infringing commercial. *Id.* at 828. By contrast, in this case, plaintiff has not submitted any evidence regarding defendants' advertising budget or the percentage of that budget spent on the brochure. Moreover, plaintiff has failed to introduce *any* facts by which a reasonable nonspeculative formula could be used to award profit damages. Discovery has closed and plaintiff failed to file a Rule 56(f) affidavit requesting additional discovery. Accordingly, plaintiff may not recover profits of the defendants.

3. *Burden of Proof*

■ Plaintiff argues that she should not have to submit any evidence to prove her claim for profits of the infringer other than proof of defendants' gross revenues. Plaintiff is correct that in the typical copyright infringement case, plaintiff bears only the minimal burden of showing (1) infringement, and (2) defendants' gross revenues. *Data General,* 36 F.3d at 1173; *Walker v. Forbes,* 28 F.3d 409, 412 (4th Cir.1994); *Metro–Goldwyn–Mayer,* 772 F.2d at 514; *Cream Records,* 754 F.2d at 828. Once this prima facie showing is met, "a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement arises, and the burden then shifts to the defendant to demonstrate what portion of its revenues represent profits, and what portion of its

profits are not traceable to the infringement." *Data General*, 36 F.3d at 1173. The problem with plaintiff's attempt to rely on the traditional minimal pleading requirement in this case, however, is that courts have not strictly applied that standard where the copyright holder seeks to recover indirect profits. *Konor Enter. v. Eagle Pub. Inc.*, 878 F.2d 138, 140 (4th Cir.1989) (collecting cases).

In similar circumstances, other courts have required that plaintiff demonstrate a connection between defendant's gross revenues and the infringement itself. For example, in *Business Trends Analysts v. Freedonia Group, Inc.*, 887 F.2d 399 (2d Cir.1989), the Second Circuit vacated an award of profit damages based on the alleged enhancement of defendant's good will through the publication of infringing material where plaintiff failed to quantify the value of the alleged enhancement through credible evidence. *Id.* at 407. Along these same lines, in *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186 (5th Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989), the Fifth Circuit affirmed the trial court's refusal to grant profit damages based on the speculative nature of plaintiff's proofs in regards to defendant's gross revenues. In that case, plaintiff sued a retail store for using copyrighted slides of its merchandise in a commercial rather than in mailers as plaintiff had approved. *Id.* at 187. Plaintiff introduced documentary evidence of the retail store's total gross revenues, and expert testimony intended to link revenues to the infringement. The district court ruled this evidence was an insufficient basis upon which to grant profit damages because plaintiff failed to prove defendant's revenues from merchandise depicted in the infringing photographs attributable to the commercial. *Id.* at 188–89. The Fifth Circuit affirmed the lower court's ruling that plaintiff's failure to connect gross revenues of the retailer to the particular slides in question was fatal to plaintiff's profit claim. *Id.* at 189–90.

Similarly, in *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir .1983), where plaintiff sued a cartographer for copying his fishing map, the Seventh Circuit reversed a profit damages award because plaintiff introduced the defendant's total gross revenues instead of revenues linked only to the infringing map. In dicta, the *Taylor* court stated, "[i]f General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." *Id.* at 1122. That is, however, exactly what plaintiff seeks to do in this case. Plaintiff's proposed method of proving profit damages lacks any evidentiary basis. If plaintiff were allowed to proceed in this way, the fact finder would be left to award profit damages based solely on whim and caprice.

As the above cases illustrate, in cases where profits cannot be traced only to the infringing work but rather to a complex income stream, courts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement. In this case, plaintiff has failed to submit any credible evidence from which the fact finder could apportion profits attributable to the infringement. Although discovery has closed, at oral argument, plaintiff was unable to offer any evidence linking defendants' revenues to the allegedly infringing brochure. Any profit damages awarded in this case would not be based on credible evidence, but rather on sheer speculation and pure conjecture. Accordingly, plaintiff's claim for profit damages shall be dismissed. Her remedy is limited to actual damages or statutory damages.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that because plaintiff failed to identify the "unknown agents" named as defendants by June 30, 1998 as required by Magistrate Judge Carlson's March 17, 1998 order, those defendants hereby are DISMISSED.

IT IS FURTHER ORDERED that defendants Bartsch and Schaffer hereby are DISMISSED WITHOUT PREJUDICE for plaintiff's failure to effect service on them as required by Magistrate Judge Carlson's March 17, 1998 order.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment as to Counts III, IV, and VI hereby is GRANTED IN PART in that plaintiff's claim for intentional infliction of emotional distress (Count IV) and for unjust enrichment (Count VI) are preempted by federal copyright law and are DISMISSED, and hereby is DENIED IN PART, in that plaintiff's claims for breach of fiduciary duty (Count III) is *not* preempted by federal copyright law.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment as to profit damages hereby is GRANTED.