**In re AURORA OIL & GAS CORPORATION,**
Debtor.

Frontier Energy, LLC, Plaintiff,

v.

Aurora Energy, Ltd, Defendant.

Bankruptcy No. DT 09–08254.
Adversary No. 09–80518.

United States Bankruptcy Court,
W.D. Michigan.

March 2, 2011.

D. Andrew Portinga, Miller Johnson, Grand Rapids, MI, Marc N. Swanson, Timothy A. Fusco, Miller Canfield Paddock & Stone PLC, Detroit, MI, for Plaintiff.

Charles N. Ash, Jr., David R. Whitfield, Stephen B. Grow, Warner Norcross & Judd LLP, Grand Rapids, MI, Scott A. Storey, Webb A. Smith Foster, Swift, Collins & Smith, P.C., Lansing, MI, for Defendant.

## MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANT'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS

SCOTT W. DALES, Bankruptcy Judge.

Frontier Energy, LLC ("Frontier" or "Plaintiff") filed this adversary proceeding against Aurora Energy, Ltd. ("Aurora"), which arises out of, or is otherwise related to, a lawsuit that Frontier filed against Aurora in Michigan's Charlevoix County Circuit Court (the "State Court Action"). The State Court Action, which predates Aurora's Chapter 11 bankruptcy proceeding, is essentially a dispute about royalty payments under two oil and gas contracts between the parties, referred to as the "Hudson Agreement" and the "Corwith Agreement."

While the State Court Action was pending, Aurora filed a voluntary petition for relief with this court under Chapter 11, automatically staying the action. In its bankruptcy case, Aurora objected to Frontier's claim related to the Agreements (DN 432) and filed a motion to estimate the claim (DN 482) in connection with Aurora's plan confirmation. In addition, shortly before the confirmation hearing, Aurora removed the State Court Action to the bankruptcy court under 28 U.S.C. § 1452, commencing the above-captioned adversary proceeding.

The parties agreed that their dispute should not delay the progress of the bankruptcy base case, and they were willing to resolve their differences in this adversary proceeding after plan confirmation. The court eventually confirmed Aurora's Chapter 11 plan and the trial on this adversary

proceeding commenced on December 9, 2010. The Plaintiff rested its case on December 14, 2010, except for the testimony of Kathie Piper, whose declaration was filed on February 2, 2011 (DN 248). Aurora now moves for Judgment on Partial Findings (DN 249, the "Motion") regarding Frontier's claims that Aurora: (1) breached the fiduciary duty it owed Frontier; (2) breached its duty to act as a reasonably prudent operator; (3) underpaid royalties to Frontier as to the Corwith Agreement; and (4) breached the Hudson Agreement by improperly deducting charges for compression from Frontier's royalty. For the following reasons, the court will grant the Motion in part and deny it in part.

## I. *RULE 52 STANDARDS*

■ After a party has been fully heard on an issue in a non-jury trial and the court finds against the party on that issue, it may enter judgment against the party on a claim or defense that under controlling law, can be maintained or defeated only with a favorable finding on that issue. Fed.R.Civ.P. 52(c); Fed. R. Bankr.P. 7052. As the court explained,

> This rule permits, but does not require, a court to enter judgment after the conclusion of a Plaintiff's proofs in nonjury trials. If a court decides to enter a judgment, it must make explicit findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052(a).

*Ingham County v. Strojny (In re Strojny)*, 337 B.R. 150, 154 (Bankr.W.D.Mich.2006). Rule 52(c) is useful, principally, in two cases: (1) where the plaintiff has not demonstrated the elements of his claim either in fact or in law, or (2) where the plaintiff's own evidence may have established one of the defendant's defenses as a matter of fact or law. *Eberhardt v. Comerica Bank*, 171 B.R. 239, 243 (Bankr.E.D.Mich.1994)

(*citing CMS Software Design Systems v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir.1986)).

## II. *BREACH OF FIDUCIARY DUTY*

■ Aurora argues that Frontier has failed to present any evidence or testimony related to the creation of a fiduciary duty owed to it by Aurora, and in fact, "there is no authority for the proposition that a fiduciary relationship exists between parties to contractual agreements." *Horizon Painting, Inc. v. Adams*, 2007 WL 600686 (Mich.App.2007). Frontier claims that "a fiduciary relationship arises from the reposing of faith, confidence and trust and reliance of one upon the judgment and advice of another," and that Aurora allegedly breached that duty when its "position of influence [was] acquired and abused" and the "confidence [was] reposed and betrayed." *Rainey v. Wayne State University*, 26 F.Supp.2d 963, 968 (Bankr. E.D.Mich.1998).

■ Having carefully considered the record and arguments of counsel, the court finds that Frontier has not substantially supported its claims with testimony or other evidence establishing that the parties had a fiduciary relationship. The face of the Hudson Agreement does not contemplate such a relationship, nor has Frontier provided facts that show that heightened duties from Aurora to Frontier existed outside the Hudson Agreement. Indeed, the evidence established only a contractual relationship between the parties, rather than any relationship arising from any position of special influence or trust that courts typically rely on in fashioning common law fiduciary duties. The record shows that both parties are sophisticated, artificial, commercial actors, and the court is not persuaded that the present state of the law would countenance the imposition of fiduciary duties under these circum-

stances. Generally, federal courts should respect state law, rather than expand it.

Therefore, the court will enter judgment for Aurora dismissing Frontier's breach of fiduciary duty claim.

## III. *REASONABLY PRUDENT OPERATOR*

■ Aurora claims that in both Agreements, the term "reasonably prudent operator" is used only to define "paying quantities," and Frontier has not made any allegation related to "paying quantities." In addition, Aurora claims there is no recognized cause of action in Michigan that is based upon a breach of duty to act as a prudent operator in the context of an underpayment of royalty action. *Romeo Investment Limited v. Michigan Consolidated Gas Co.*, 2007 WL 1264008 (Mich. App.2007) (casting doubt on existence of prudent operator claim).

Frontier claims that the "prudent operator" standard is an implied covenant in leases and is a standard of behavior required in every provision of an oil and gas lease, even though it is not necessarily mentioned in the document. To illustrate, Frontier claims Aurora wrongly classified gathering lines as transportation lines; set up a subsidiary for the purpose of charging Frontier for third party transportation; and used the most expensive route to increase its subsidiary's profits.

Even assuming Michigan would recognize such a claim, the court finds that Frontier has failed to offer any significant evidence, from either expert or lay witnesses, defining the reasonably prudent operator standard, or any evidence or testimony regarding what a more prudent course of action would have been, or how Aurora acted imprudently.

Consequently, the court will enter judgment for Aurora, dismissing Frontier's

prudent operator claim as not supported by the evidence.

## IV. *CORWITH AGREEMENT*

■ Aurora argues that Frontier has failed to provide any evidence regarding damages related to the Corwith Agreement, and that damages are a required element in a breach of contract claim. *Leaf Nursery, Inc. v. Kmart Corp.*, 485 F.Supp.2d 815, 818 (E.D.Mich.2007). It also argues that the alleged damages must be established by a reasonable degree of certainty through an expert.

Frontier claims that it supplied evidence of damages through the testimony of Mr. Lawson, Mr. Nielson and the declaration of Ms. Piper. In addition, Frontier states that Aurora never introduced any evidence to rebut Frontier's proof of claim regarding the damages sustained under the Corwith Agreement, and a proof of claim is *prima facie* evidence of the validity and amount of the claim. Last, Frontier argues that in an Order Regarding Defendant's Motion for Partial Summary Judgment (DN 147), this court foreclosed Aurora from relitigating the requirement of expert testimony to determine damages under the Agreements.

At trial, Frontier attempted to offer testimony and proffered a spreadsheet of damages regarding the Corwith Agreement through Keith Nielson. The court excluded the exhibit, recognizing that it was inadmissible as an improper lay opinion under Fed.R.Evid. 701. The court also found the testimony of Mr. Nielson unreliable in that rather than exercising his own judgment, Mr. Nielson admitted he compiled the information in the very complex spreadsheet by attempting to follow Frontier's expert's methods of calculating the damages regarding the Hudson Agreement. Frontier's expert testified that he had no opinion whatsoever as to

the Corwith Agreement. No other competent evidence was offered regarding damages under the Corwith Agreement, except conclusory statements by Mr. Lawson, and by Ms. Piper in her declaration regarding missed royalty payments and excessive deductions, both of which lack the requisite foundation to support their calculations.

In its Order Regarding Defendant's Motion for Partial Summary Judgment (the "MSJ Order"), after drawing all inferences in favor of Frontier, the non-moving party, the court found that summary judgment was not appropriate at that time. It did not foreclose Frontier from establishing its damages at trial, nor did it foreclose Frontier from using expert testimony. In fact, in the MSJ Order the court stated that expert testimony "would certainly be helpful," that Ms. Piper's declaration "uses language evocative of expert testimony," but that "Ms. Piper will not be permitted to testify as an expert at trial." *See* MSJ Order at p. 5.

██ As for Aurora's failure to introduce evidence to rebut Frontier's proof of claim, Aurora filed an objection to Frontier's claims on November 10, 2009 (DN 432), on the grounds that the claims lack support. This entire adversary proceeding, in which Frontier has acknowledged it bears the burden of proof,[1] is in essence a controversy regarding Frontier's claim and Frontier's opportunity to support its claim. If Frontier had intended to rely solely on the *prima facie* effect of its proof of claim under Fed. R. Bankr.P. 3001(f), the court would have expected Frontier to have introduced its proof of claim or at least asked the court to take judicial notice (and supplied the necessary documents). *See* Fed.R.Evid. 201(d). The evidentiary pre-

sumption only attaches to proofs of claim properly supported and in conformance with the rules. Because the Plaintiff has not asked the court to take judicial notice, nor favored the court with a copy of its proof of claim, the court is unwilling and unable to determine whether a presumption arises at all. *See* 9 Collier on Bankruptcy, ¶ 3001.09[1] (16th ed.); *see also In re Saffron,* 2010 WL 5606730 (Bankr. W.D.Mich.2010).

The court will award judgment to Aurora dismissing Frontier's damage claim as it relates to the Corwith Agreement.

## V. *COMPRESSION COSTS*

Frontier argues that Aurora breached the Hudson Agreement by failing to pay all the royalties due. Frontier bases this claim in part upon its expert's determination that Aurora improperly deducted first-stage compression costs from Frontier's royalty. Frontier contends that the deduction was improper because first stage compression is a production cost and not a post-production cost ("PPC").

Aurora claims that the Hudson Agreement allows it to deduct from Frontier's royalty those costs incurred for CO2, third party transportation, and necessary compression. *See* Hudson Agreement, p. 15, ¶ 6. Aurora says that at trial, Frontier failed to show any evidence that the compression used by Aurora was unnecessary, or that the Hudson Agreement distinguishes between a production cost and a PPC, in this regard.

The court is not prepared to render judgment as to this aspect of the parties' dispute at this time, and will defer a decision on the compression issue until the close of the evidence. *See* Fed.R.Civ.P.

---

**1.** *See* Transcript of Trial on December 9, 2010, at p. 7, line 17–18 ("I think we have the burden of proof on our claim, Your Honor.").

52(c). The Motion, therefore, will be denied without prejudice as to the compression issues.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Motion is GRANTED as to:

   a. Breach of Fiduciary Duty claim;

   b. Breach of Duty to Act as a Reasonably Prudent Operator claim; and

   c. The damage element of the breach of contract regarding the Corwith Agreement;

2. The Motion is DENIED WITHOUT PREJUDICE as to the necessary compression portion of the breach of contract claim regarding the Hudson Agreement.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr.P. 9022 and LBR 5005–4 upon Timothy A. Fusco, Esq., D. Andrew Portinga, Esq., Charles N. Ash, Jr., Esq., and David R. Whitfield, Esq.